## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

ELISA FRANCO,            :
     *Plaintiff*,         :
                      :       **CIVIL ACTION NUMBER:**
     **v.**               :
                      :       **3:14-CV-00422 (VLB)**
**A BETTER WAY WHOLESALE AUTOS,**  :
**INC. and BCI FINANCIAL CORP.,**  :      **March 1, 2016**
     *Defendants*.       :

## MEMORANDUM OF DECISION

Plaintiff, Elisa Franco, purchased an automobile from Defendant A Better Way Wholesale Autos., Inc. ("ABW"), and Franco and ABW entered into a form-based financing agreement, which ABW later assigned to Defendant BCI Financial Corp. ("BCI").  Franco thereafter brought this action seeking damages pursuant to, *inter alia*, the Truth in Lending Act, 15 U.S.C. § 1601, *et. seq.* ("TILA").  She alleged that the financing agreement did not disclose the vendor's single interest ("VSI") insurance as a finance charge and did not contain a written statement that she could obtain VSI insurance elsewhere.  Plaintiff and Defendants crossmove for summary judgment.  The issue is whether a reasonable juror could find that an *unchecked* provision stating "[i]f the preceding box is checked, . . . [y]ou may chose the insurance company through which the VSI insurance is obtained" constitutes "a clear and specific statement in writing . . . that the person to whom credit is extended may choose the person through which the insurance is obtained."  No reasonable juror could so find.  The Court therefore enters partial summary judgment in favor of Franco.

1

## Factual Background

The following facts, which are undisputed unless otherwise noted, are drawn from the record.  In August 2013, Franco purchased a 2006 Jeep Grand Cherokee from ABW.  ECF No. 36-4 at ¶ 4.  To finance the purchase, Franco and ABW entered into a form-based retail installment sales contract ("Financing Agreement").  *Id.* at ¶ 5.  The Financing Agreement included a $60 charge for VSI insurance that was disclosed as part of the amount financed, not a finance charge.  ECF No. 36-4 at 3.  ABW required Franco to purchase VSI insurance as a condition of financing by BCI, the assignee of the Financing Agreement.[1]  ECF No. 37-3 at ¶¶ 3, 9.

The Financing Agreement contains various provisions permitting the parties to add terms by checking a corresponding box.  ECF No. 36-4 at 3–6.  One optional provision states:

> If the preceding box is checked, we require VSI insurance for the initial term of the contract to protect us for loss or damage to the vehicle (collision, fire, theft).  VSI insurance is for our protection. The insurance does not protect your interest in the vehicle.  You may choose the Insurance company through which the VSI Insurance is obtained.  If you elect to purchase VSI insurance through us, the cost of this insurance is $60.00 . . . .

("Notice Provision").  *Id.* at 4 (attached).  A small box appears in the upper left-hand margin of the Notice Provision.  *Id.*  No mark of any kind appears in that particular box.  *Id.*  An "xx" appears above and to the left of the box for the Notice Provision, in between two other text boxes, each containing provisions of the

---

[1] Defendants denied this statement without providing evidence in support of their denial.  *Compare* ECF No. 36-2 at ¶ 4, *with* ECF No. 39-1 at ¶ 4.  Oddly, Defendants' 56(a)1 statement states the exact same information in support of their motion for summary judgment.  ECF No. 37-2 at ¶¶ 3, 8.

Financing Agreement unrelated to the Notice Provision.  *Id.*  The parties disagree about whether the "xx" constitutes checking the box for the Notice Provision.

<u>Legal Analysis</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving the absence of a genuine factual dispute.  *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

TILA "assure[s] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to [her] and avoid the uninformed use of credit" and "protect[s] the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601.  TILA thus requires creditors to disclose all finance charges.  15 U.S.C. § 1638(a)(3).  A finance charge includes, *inter alia*, "[c]harges or premiums for insurance, written in connection with any consumer credit transaction, against

3

loss of or damage to property or against liability arising out of the ownership or use of property."  15 U.S.C. § 1605(c).  Charges for insurance, however, do not constitute finance charges and therefore need not be disclosed as such when:

> [A] clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

("Notice Exception").  *Id.*; *see also Velasquez v. Natalino Motors, LLC*, No. 3:08-CV-1427 RNC, 2011 WL 4572060, at *4 (D. Conn. Sept. 30, 2011).  Similarly, pursuant to Regulation Z implementing TILA, "a charge for insurance can be excluded from the finance charge if 'the insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed.'"  *Velasquez*, 2011 WL 4572060, at *4 (alterations omitted) (quoting 12 C.F.R. § 226.4(d)(2)(i)).

The parties agree that the charge for VSI insurance must be disclosed as a finance charge unless the Notice Exception applies.  ECF Nos. 36-1 (Franco Mem.) at 7; 39 (Defs. Opp'n) at 3.  The parties also agree that the charge for VSI insurance was not disclosed as a finance charge.  ECF Nos. 36-2 (56(a)1 Statement) at ¶ 3; 39-1 (56(a)2 Statement) at ¶ 3.  The parties further agree that the Notice Provision satisfies the Notice Exception if it is part of the Financing Agreement.  ECF Nos. 36-1 (Mem.) at 5; 39 (Defs. Opp'n) at 4.  The parties disagree only about whether the Financing Agreement included the Notice Provision.  *Id.*  Plaintiff argues that no reasonable juror could find the Notice Provision applicable.  ECF No. 36-1 at 8–9.  Defendants argue that every reasonable juror would find the provision applicable.  ECF No. 37-1 at 3–5.

4

Whether a box has or has not been checked is ostensibly a factual question to be resolved by the trier of fact, not a question of law to be resolved by a court on summary judgment.  This action, however, presents a rare exception to the rule that a question of fact may not be resolved on summary judgment because here the factual dispute isn't genuine.  The answer is so obvious that no "'fair-minded jury could return a verdict for the [defendants] on the evidence presented.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson,* 477 U.S. at 248).  The box simply wasn't checked.  The Notice Provision in the Financing Agreement was not one of the optional provisions selected to be included in the Financing Agreement, and the parties agree that the Financing Agreement serves as the only possible source for the requisite notice.

Defendants identify an xx located both to the left and top of the bounded Notice Provision and argue that this stray mark constitutes undisputed evidence (or at least some evidence on which a reasonable juror could find) that the Notice Provision applied.[2]  ECF Nos. 37-1 at 3–5; 39 at 4.  No reasonable juror could find that a mark positioned between two provisions other than the one at issue constitutes checking the box.  The "xx" is not immediately visible because it is in

---

[2] Defendants raise two other arguments: (1) the itemization section of the Financing Agreement informed Franco of the VSI charge; and (2) the Notice Provision was bolded and listed the amount that ABW would charge for VSI insurance.  ECF No. 37-1 at 4.  These arguments miss the mark.  The itemization section proves only that the VSI charge was listed as the amount financed, not that Franco had clear and specific written notice that she could have purchased the insurance elsewhere.  Further, the Notice Provision applied only if the preceding box was checked, and the box wasn't checked.  The Notice Provision could have been bolded, underlined, italicized, and typed in 72 font, and the outcome would still be the same.

the margin between two different contractual provisions.  The mark has no clear significance and appears to be a stray mark.  Was the "xx" intended to apply to either of the two optional provisions beside which it appears?  Does the "xx" simply highlight one of the two other provisions between which it appears?  Does the "xx" have any significance at all or is it just a stray mark?  These are all questions raised by the position of the "xx"

The evidence suggests an ambiguity at most, and evidence permitting a reasonable juror to infer the existence of an ambiguity would not be sufficient for Defendants to prevail at trial.  TILA requires a creditor to provide a person receiving credit with "a clear and specific statement in writing . . . stating that [she] may choose the person through which the insurance is to be obtained."  By definition an ambiguous provision does not constitute "a clear and specific statement in writing," as Defendant ABW was required to provide.

Moreover, applying state-law principles of contract interpretation, any ambiguity would unquestionably result in a verdict in Franco's favor.  *See Kramer v. Marine Midland Bank*, 559 F.Supp. 273, 284 (S.D.N.Y. 1983) (applying state parole evidence rule to interpret financing agreement for purposes of addressing TILA claim).  When a contract is ambiguous, courts construe the ambiguity against the drafter.  *Ramirez v. Health Net of Ne., Inc.*, 285 Conn. 1, 14 (2008).  If the Financing Agreement contains a possible ambiguity with respect to the applicability of the Notice Provision, the Notice Provision would not apply because its application favors ABW.  Moreover, when a contract provision is ambiguous, courts look to extrinsic evidence to ascertain its meaning.  *Jay*

*Realty, Inc. v. Ahearn Dev. Corp.*, 189 Conn. 52, 56 (1983).  Franco provides evidence that the parties did not intend for the Notice Provision to apply: one of ABW's finance managers admitted in sworn testimony that ABW's customers could not purchase VSI insurance elsewhere.  ECF No. 36-3 at 4.  Defendants provide no contrary evidence.  Accordingly, the Court rules as a matter of law that no reasonable juror could find that the stray xx constitutes a "clear and specific statement" providing Franco with notice that she "may choose the person through which the insurance is to be obtained."

Defendant ABW is therefore liable to Franco with respect to Franco's TILA claim.[3]  Defendant BCI, as the assignee, is also liable because the violation is apparent on the face of the Financing Agreement.  *See* 15 U.S.C. § 1641(a) (assignee liable if violation "apparent on the face of the disclosure statement").  The Financing Agreement listed the VSI charge as an amount financed and contained no applicable written notice as required by Section 1605.  Defendants also impliedly concede the amount of damages at issue: $2,000.  *Cf.* Local R. Civ. P. 7(a)(1) ("Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion.").  Section 1640(a)(2)(A)(i) provides that a plaintiff is entitled to recover double the finance charge up to $2,000.  The finance charge here is $3,394.47.  ECF No. 37-4 at 7.  The $2,000 cap therefore applies and

---

[3] Franco brought other state-law claims, which are not raised in either Plaintiff or Defendants' motions for partial summary judgment.  Those claims will be the subject of a trial scheduled for jury selection on May 31, 2016.

Defendants are jointly and severally liable.[4]  *See Greenlee v. Steering Wheel, Inc.*, 693 F.Supp. 1396, 1396 (D. Conn. 1988) (holding that liability of creditor and assignee is joint and several, not separate and distinct).

<u>Conclusion</u>

For the foregoing reasons, the Court GRANTS Plaintiff's motion for partial summary judgment and DENIES Defendants' motion for partial summary judgment.  The Court ENTERS partial summary judgment in Plaintiff's favor with respect to the TILA claim against both Defendants and awards her $2,000 in damages on which Defendants jointly and severally liable.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Order dated in Hartford, Connecticut on March 1, 2016.

---

[4] Plaintiff should move for attorney fees, with supporting documentation, after a final judgment has been entered.

G If Paragraph H Does Not Include a Cash Price

d Government License and/or Registration Fees

$ 105.00

H Government Certificate of Title Fees

$ 35.00

I Other Charges (Seller must identify who is paid and describe purpose)

| to | for Prior Credit or Lease Balance | N/A |
| A BETTER WAY WHO | Document Fee | $ 599.00 |
| ALLSTATE | Service Contract | $ 2,000.00 |
| to | for | $ N/A |
| to | for | $ N/A |
| to | for | $ N/A |
| to | for | $ N/A |
| to | for | $ N/A |
| to | for | $ N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf     $ 3,193.00 (4)

5 Amount Financed (3 + 4)     $ 4,261.73 (5)

N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____
Buyer Signature                    Date

X _____
Co-Buyer Signature                 Date

THE INSURANCE INCLUDED IN THIS CONTRACT DOES NOT PROVIDE COVERAGE FOR PERSONAL LIABILITY OR PROPERTY DAMAGE CAUSED TO OTHERS.

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before _____ , Year _____ . SELLER'S INITIALS _____

**Finance Charge** begins on the date of this contract unless the box in the next sentence is checked. If this box is checked, [   ] Finance Charge begins on _____ and we will not charge Finance Charge before this date, even if you pay late. Regardless of whether the box in the preceding sentence is checked, once Finance Charge begins, you will have to pay Finance Charge on the unpaid Amount Financed at the Annual Percentage Rate shown above. (See also Section 1.a. on the reverse side.)

Buyer Signs X _____     Co-Buyer Signs X _____

If you make any required payment (including any deferred payment) more than 10 days late, you will have to pay a late charge as described above. If you make any required payment (including any deferred payment) late, we may also take the steps described in Sections 3.b. through 3.g. on the reverse side.

By signing below, you agree that we told you what may happen if you do not make the first or any other required payment (including any deferred payment) on time.

**Returned Check Charge:** If the cash price of the vehicle is more than $50,000, you agree to pay a charge of $ 20 . If any check you give us is dishonored.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance): If the preceding box is checked, we require VSI insurance for the initial term of the contract to protect us for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for our protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI Insurance is obtained. If you elect to purchase VSI Insurance through us, the cost of this insurance is $ 50.00 and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term   60   Mos.          NSD GAP          _____
                                           Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

## NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _____   Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a true and completely filled-in copy when you signed it.

NOTICE TO THE BUYER: 1. Do not sign this contract before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this contract when you sign it. 3. Under the law, you have the following rights, among others: (a) To pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

Buyer Signs X _____   Date 08/23/13   Co-Buyer Signs X _____   Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____   Address _____

Seller signs _____   Date _____   By X _____   Title _____

Seller assigns its interest in this contract to   BCI FINANCIAL CORPORATION   (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse          ☐ Assigned without recourse          ☐ Assigned with limited recourse

Seller   A BETTER WAY WHOLESALE AUTOS   By _____   Title _____

FORM NO. 553-CT (REV. 6/10)   U.S. PATENT NO. D460,782
©2010 The Reynolds and Reynolds Company   TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

DEALER COPY